McCONNELL, Circuit Judge,
concurring in part and dissenting in part.
K.C., a young teenager with learning disabilities, was coerced into performing oral sex on a number of boys who were fellow students at her middle school. Al *1127 though most of this activity (and all of the actual sexual contact) took place outside of school, she was mercilessly teased at school, the boys threatened to spread rumors about her and to circulate naked pictures of her around the school, and on at least one occasion she was importuned for sex on the school bus. School authorities took no effective remedial measures. Eventually, two weeks after her most explicit complaint to the school, she suffered a series of psychotic episodes, probably caused by the assaults, and on advice of her psychiatrist withdrew from school. Her mother brought suit on her behalf against the school district for its failure to respond, claiming that K.C. was “on the basis of sex, ... excluded from participation in ... [an] educational program or activity receiving Federal financial assistance,” in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).[1] The most important matters in dispute are whether school authorities had actual knowledge of the sexual harassment in the spring of 2002 and whether, after January 2003, when they certainly had actual knowledge, they acted with deliberate indifference, effectively causing her exclusion from school. Because the case was dismissed on summary judgment, we ask only whether, drawing all reasonable inferences in favor of the plaintiff, the plaintiff has raised a disputed question of material fact regarding these issues.
I. Actual Knowledge In Spring, 2002
While it is a close call, I agree with the majority that the school district did not have actual knowledge of the sexual harassment of K.C. until January 16, 2003. By her own admission, K.C.’s conversation with her counselor, Margie Briggs-Casson, in the spring of 2002, did not make clear that the harassment she was undergoing was sexual in nature. K.C. told the counselor “[t]hat these boys were bothering me and no one understood me in the town.” App. 183. The following exchange ensued at her deposition:
Q You never told Margie [the counsel- or] that the boys were forcing you to perform oral sex on them, right?
A Yes, I did.
Q Did you use those words?
A No, I didn’t know those words then. Q Okay. And—
A But I put it in my own words at the time.
Q Okay. And those words were that boys were bothering you?
A Yeah.
Id. at 184.
The exchange is disturbing because K.C. was attempting to communicate what was happening to the counselor but did not have the words. One would think a trained middle school counselor, faced with a mildly retarded young student who was severely distressed about being “bothered” by some boys in her class, would ask the obvious follow-up question — in what way are they bothering you? — -especially since one of the boys had previously been disciplined for engaging in sexual harassment. However, nothing in the record suggests that any such follow-up occurred, and the plaintiff apparently did not take the counselor’s deposition to find out why not. (At least, no such deposition is in the record.) On these facts, to impose liability on the school district would effectively hold it responsible for what it “ ‘should have known’ about harassment but failed to uncover and eliminate.” Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274, 282, 118 S.Ct. *1128 1989, 141 L.Ed.2d 277 (1998). That is not the duty imposed by Title IX, which is solely to respond to sexual harassment of which school officials have “actual knowledge.” Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). See generally Simpson v. Univ. of Colo. Boulder, 500 F.3d 1170, 1174-77 (10th Cir.2007).
II. Deliberate Indifference After January 16, 2003
The defendants concede, and the majority agrees, that the school district gained actual knowledge of the harassment on January 16, 2003. But the majority affirms the district court’s grant of summary judgment in favor of the defendants on two grounds: first, that the district’s response was not clearly unreasonable; second, that even if unreasonable, it did not cause K.C. any legal harm. I respectfully dissent on both points.
A. The School District’s Inaction Was Not Reasonable
Promptly upon hearing K.C.’s account of the boys’ treatment of her, the high school counselor contacted Jason Patrick, a police officer assigned to the school as a “resource officer,” to investigate the incidents. He promptly interviewed K.C. about the incidents, and then questioned many of K.C.’s friends as well as the boys involved. He prepared a 14-page written report, which was presented to the school principal. (K.C.’s mother was urged to read the report, but declined to do so.) The report confirmed many of the sexual acts and other misconduct about which K.C. complained. Officer Patrick also talked to the school principal some fifty times about the progress of the investigation. Based on Officer Patrick’s report and those conversations, the principal became convinced that K.C. was sexually harassed by the boys. Officer Patrick also forwarded the report to District Attorney Bonnie Roe-sink, who decided not to file criminal charges. Ms. Roesink explained that “the State would not be able to prove beyond a reasonable doubt that the activity ... was not consensual. While unfortunate that these incidents occurred, I do not believe that we would be able to meet our burden of proof in a trial setting.” Further, a trial would “expos[e K.C.] to ... tremendous trauma.” App. 212.
Upon learning that the harassment of K.C. would not be criminally prosecuted, the school distinct did nothing more. By the principal’s own admission in deposition, neither the school nor the school district performed any additional investigation; the principal did not even speak with the boys regarding their misconduct; and none of the boys was disciplined in any way. The district’s entire response to the sexual coercion and harassment that caused K.C. to leave school was to refer the issue to a police officer and then to do nothing when no charges were filed.
The plaintiff complains both of the school district’s failure to engage in its own investigation and of its response. I agree with the majority that the decision to rely on Officer Patrick to conduct the investigation was reasonable. He was a member of the school staff; he was apparently well-qualified to conduct an investigation into conduct that had evident criminal implications; his report appears thorough — and confirmatory of K.C.’s complaints; and he communicated frequently with the school principal as the investigation proceeded. Even if there might have been some better way to conduct the investigation (and plaintiff does not explain why any alternative would have been better), no reasonable jury could find the investigation a sign of deliberate indifference.
*1129 The school district’s inaction after receiving the report, however, was “clearly unreasonable in light of the known circumstances.” Davis, 526 U.S. at 648, 119 S.Ct. 1661. At this point, the school principal no longer had any doubt that the harassment had occurred and that it was predicated, at least in part, on sex, and therefore within the ambit of Title IX. Having read Officer Patrick’s report, the principal knew of its frequency and severity. The principal knew the names of the boys involved. One of the malefactors had committed acts of sexual harassment at school before. Yet the school district did absolutely nothing. No discipline. No counseling. No communications with the boys’ parents. The principal did not even call the perpetrators into his office for an admonitory chat. This cannot be a reasonable response. See Escue v. N. Okla. College, 450 F.3d 1146, 1155 (10th Cir.2006) (“[A] minimalist response is not within the contemplation of a reasonable response.” (internal quotation marks omitted)).
It is a bit unclear why the majority concludes that this total inaction was reasonable under the circumstances. The majority first embraces the defendants’ argument that “discipline was not appropriate in this case since most of the incidents did not occur on school grounds, and the district reasonably could believe it did not have responsibility or control over the incidents.” Maj. Op. 1123. Either the majority has set the bar for legal responsibility on the part of the school district too high as a matter of law or it has failed to view the evidence in the light most favorable to the plaintiff.
The majority concedes, in a footnote, that it is not true that “harassment occurring off school grounds cannot as a matter of law create liability under Title IX.” Id. at 1121-22 n. I.[2] But it makes no attempt to delineate the reach of the school district’s potential liability in the context of this case, or determine whether the district’s legal responsibility extends to some (even if not all) of the boys’ misconduct.
According to the Supreme Court, the proper inquiry is whether the school district “exercises substantial control over both the harasser and the context in which the known harassment occurs.” Davis, 526 U.S. at 645, 119 S.Ct. 1661. As of January, one of the boys, Nick Mangione, was enrolled in the high school. Steven Thomas, who was perhaps the most egregious offender, was enrolled in the high school but had not been attending since November, 2002, for reasons unknown to the school authorities. Thomas Barnes, a year younger, was still at the middle school but would attend the high school the following year. Alex Church never attended the high school; the record does not reflect whether he attended a school operated by the district. Although one of the reasons Principal Schmidt gave in his deposition for taking no disciplinary action was that “[m]any of the situations after finding out did not take place at our school,” App. 210, he also stated:
Q. Is it your understanding as the principal of the high school that the high school can discipline students for conduct outside of school grounds.
A. Yes, yes.
Q. Statutorily, they can?
A. Yes.

Id.

The principal thus did not assert that he lacked the statutory authority to impose discipline in this context. He defended his inaction, instead, on three more specific *1130 discretionary grounds: (1) that the only harasser then attending the high school, Nick Mangione, was the least culpable of the four; (2) that the Patrick report said that the sexual acts were “consensual” and that the prosecutor was not going to pursue the matter criminally; and (3) that he did not “have any information directly” from K.C. or her mother. App. 210. He did not claim there was nothing more the school had authority to do. On this record — particularly bearing in mind that it must be read in the light most favorable to the plaintiff — there exists at least a disputed question of material fact regarding the reach of the school district’s control over the situation.
Moreover, while the actual sexual assaults in this case did not happen at school, much of the harassment did. The plaintiffs evidence shows that the boys repeatedly pestered K.C. for sex (including at least once on the school bus), that they “were harassing her on the bus, [and] in the halls ... at school,” App. 169, and threatened to spread sexual rumors and naked photographs of her around the school. Her treatment in middle school had been so bad that she was afraid to go to math class. These claims are supported by more than “oblique and general references” in the record (Maj. Op. 1121-22 n. 1); they are documented in the plaintiffs deposition testimony and her complaints to the school counselor, and in many cases are confirmed by the police report. It is true that when she was in middle school, the district did not know that this in-school harassment was sexual in nature and thus was under no Title IX obligation to act. But after January 16 the defendants had the full story. Even if the after-school assaults themselves were beyond its jurisdiction, the school district was not entitled to ignore the in-school harassment, making no attempt to bring it to a halt.
The majority also finds it reasonable “that the school district deferred to law enforcement.” Maj. Op. 1122; see also id. at 1123 (“Principal Schmidt determined that discipline was not appropriate in this case since ... Officer Patrick’s investigation and the district attorney’s assessment concluded that it would be difficult to prove that the conduct was not consensual.”). But a school district’s responsibilities to its students are not coterminous with a prosecutor’s judgments about what cases to bring in court. The prosecutor did not conclude that the sex acts in which K.C. engaged were in fact “consensual” (whatever that might mean for a girl of her age and mental condition), but only that it was unlikely that the state could “meet [its] burden of proof in a trial setting.” App. 212. School discipline is not a trial setting. Student misconduct need not be established beyond a reasonable doubt.
Moreover, even assuming the boys had committed no prosecutable criminal acts, that does not mean they did not engage in sexual harassment. Principal Schmidt admitted in his deposition that he believed that K.C. was sexually harassed.[3] That is what matters under Title IX. For purposes of Title IX, it is wholly irrelevant whether she was also the victim of criminal assault. A great deal of harassment falls short of the criminal; that does not mean a school with actual knowledge of harassing conduct is free to ignore it.
*1131 The majority also suggests that the school district’s inaction is excused by the fact that Ms. Rost and K.C. retained a lawyer and did not speak to the district after K.C.’s two-hour interview with Officer Patrick. I admit this gives me pause. It is difficult for school officials to work out a reasonable response to a student’s problems when her mother prefers to protect her position in a future lawsuit rather than discuss what happened and what should be done. But schools have legal and pedagogical obligations even when their students’ families are unhelpful or litigious. By the time the family’s lawyer shut down communication, K.C. had already talked to Officer Patrick for about two hours and had given him numerous details of what had happened to her. The family’s subsequent silence did not prevent the school from taking appropriate measures.
The majority also emphasizes that “administrators need not ‘engage in any particular disciplinary action’ under Title IX.” Maj. Op. 1123 (quoting Davis, 526 U.S. at 648-49, 119 S.Ct. 1661). The school was not necessarily required by federal law to expel the boys from school. A broad range of lesser measures might well be appropriate responses to a situation like this. If the school had undertaken any disciplinary measures, or attempted to ensure that K.C. could return to school without further harassment, it might well have satisfied its obligation. However, Title IX does not allow a school district, without justification, to decide that harassment must be met with criminal prosecution or nothing.
B. The Unreasonable Response Excluded K.C. From School
The majority also holds that even if the school district’s non-response was unreasonable, the district is not liable because K.C. suffered no more harassment after she left school on January 16, 2003. This misunderstands Title IX. Title IX forbids a school district from “excluding]” students on the basis of their sex. 20 U.S.C. § 1681(a). A district is liable for student-on-student sexual harassment that “effectively bars the victim’s access to an educational opportunity or benefit.” Davis, 526 U.S. at 633, 119 S.Ct. 1661. Thus, if the district’s deliberate indifference to K.C.’s sexual harassment is responsible for her decision, on advice of her psychiatrist, not to return to the school, the district is liable for illegally excluding her.
The majority states that “the district’s response did not cause K.C. to undergo harassment or make her liable or vulnerable to it.” Maj. Op. 1123-24. But the reason K.C. did not undergo additional harassment is that she never went back to school. Moreover, there is evidence from which a jury could infer that the school’s non-response to the boys’ sexual harassment is what kept her away. KC.’s psychiatrist advised Ms. Rost that it was important “to help [K.C.] find a safer environment, especially considering that if she goes back to the exact same high school, she will be around [the boys.]” R. 310. When asked why she had refused to send K.C. back to school, Ms. Rost testified that she was relying on the psychiatrist’s recommendation not to return. The majority is therefore wrong to conclude that “Ms. Rost would not have allowed K.C. to return to any school in the district under any circumstances,” Maj. Op. 1123 n. 2 (emphasis added). The record suggests that it was the undeterred presence of the boys that kept K.C. from returning to school.
The fact that K.C. was not harassed after leaving the school does not entitle the district to summary judgment. It is true that in Davis the Supreme Court said that, to create liability, “deliberate indifference *1132 must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it,” Davis, 526 U.S. at 645, 119 S.Ct. 1661, but that comment must not be taken out of context. Davis elaborated the further-harassment requirement in explaining that it was “not necessary ... to show physical exclusion to demonstrate that students have been deprived [of their rights.]” Id. at 651, 119 S.Ct. 1661. Davis never suggested that exclusion would not be sufficient to create liability and indeed said that “[t]he most obvious example of student-on-student sexual harassment capable of triggering a damages claim would ... involve the overt, physical deprivation of access to school resources.” Id. at 650, 119 S.Ct. 1661.
If a school’s unreasonable inaction in response to sexual harassment makes further harassment reasonably certain, it would make no sense to impose liability only if a student returned for more abuse, but not if she stayed away and was effectively “excluded from participation” in school. 20 U.S.C. § 1681(a).
III. Conclusion
There are genuine disputes of material fact as to the reasonableness of the school’s response and K.C.’s consequent exclusion from Steamboat Springs High School. I would therefore reverse the district court’s grant of summary judgment on that ground.

. The plaintiff also asserted claims under the Fourteenth Amendment. I agree with the majority that those claims were properly dismissed on summary judgment.

. In Simpson, a public university was held responsible under Title IX for sexual assaults that occurred in the victim’s apartment. 500 F.3d at 1180.

. This case is thus distinguishable from Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610 (8th Cir.1999), on which the majority relies. In that case, the school did not act because it had insufficient evidence that misconduct had occurred. Here, after receiving Officer Patrick’s report, the principal entertained no doubt that K.C. had been sexually harassed.